THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN FOX and LYNNE WOODARD, | ) | |
| | ) | |
| *Plaintiffs*, | ) | No. 21 C 6720 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| DUPAGE TOWNSHIP, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Maureen Fox and Lynne Woodard worked for Defendant DuPage Township from 2001 and 2005 respectively until they were terminated in May 2021. Plaintiffs initiated this lawsuit against the Township, claiming they were terminated because of their political affiliation and activity, in violation of their First Amendment rights and in contravention of an implied-in-fact contract with the Township. Now, the Township moves for summary judgment. (Dkt. 103). For the reasons discussed below, the Township's motion [103] is granted.

## BACKGROUND

### I.        Plaintiffs' Failure to Comply with Local Rules for Summary Judgment

At summary judgment, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56. Alternatively, the party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id*. The local rules make clear that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C). The Court has discretion to require strict

1

compliance with Rule 56.1. *See e.g.*, *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (collecting cases); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635 (7th Cir. 2008).

Here, both Plaintiffs' response to Defendant's statement of material facts and Plaintiffs' own statement of additional facts are altogether lacking in evidentiary support. (*See* Dkt. 110). Rather than making their case on the facts developed at discovery, Plaintiffs rely on unsubstantiated denials and factual assertions based on speculation. The Court will not "wade through improper denials and legal argument in search of a genuinely disputed fact." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (quoting *Bordelon v. Chicago Sch. Reform Bd.*, 233 F.3d 524, 529 (7th Cir. 2000)). Consequently, the Court strikes Plaintiffs' statement of additional facts and every factual assertion in Plaintiffs' response to Defendant's statement of material facts that lacks direct citation to easily identifiable support in the record. *See McDaniel v. Syed*, 2024 WL 4197357, at *3 (7th Cir. Sept. 16, 2024) (district courts "may require strict compliance with their local rules," and enforcing such rules in the event of non-compliance is not an abuse of discretion); *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020) (same); *Cichon v. Exelon Generation Co. L.L.C.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed.").

This is by no means an automatic grant of Defendant's motion. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (noting the movant "must still demonstrate that it is entitled to judgment as a matter of law"). The Court will thus recite the facts as favorably to Plaintiffs as the record and Local Rule 56.1 permit, before determining whether the Township is entitled to judgment on those facts. *Hudson v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 2019 WL 4261581, at *3 (N.D. Ill. Sept. 9, 2019) (citing *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)).

## II. Factual Background

Plaintiffs worked for the Township for many years under Republican leadership. (Dkt. 105 ¶¶ 1, 10, 18). Fox began working as the Township Administrator in July 2001. (*Id.* ¶ 1). A few years into her tenure as Township Administrator, Fox was reassigned to the public relations director position and, later, to senior program director at the Levy Center for senior citizens. (*Id.* ¶¶ 4, 8). Fox hired Woodard in 2005 as the Township's banquet supervisor/bartender. (*Id.* ¶ 10). Around 2015, Woodard also took on the role of senior recreational director. (*Id.* ¶ 11).

As new employees, Fox and Woodard both received copies of the Township's Employee Handbook ("Handbook") containing various policies and procedures. (Dkt. 105 ¶¶ 3, 72; Dkt. 114 "Employee Handbook"). Importantly, one of the first sections in the Handbook, entitled "At-Will Employment" made clear the following: (1) the Handbook and its policies do not create any contractual rights; (2) all employees are at-will unless they sign a written agreement changing their at-will status; (3) at-will employees may be terminated at any time with or without cause or notice; and (4) nothing in the Handbook is intended to alter an employee's at-will status in any way. (Employee Handbook at 6). Neither Fox nor Woodard signed contracts changing their at-will employee status for any of the positions they maintained. (Dkt. 105 ¶¶ 8, 73).

3

In the spring of 2018, Gary Marschke, a Democrat, decided to run for public office. (*Id.* ¶ 24). Part of his motivation came from his dissatisfaction with the Township's management. (*Id.* ¶¶ 24–27). Among other things, Marschke took issue with the lack of accountability over the Levy Center, which was caused, at least in part, by the duplicative nature of Fox's role as the senior recreational director and Woodard's role as the senior program director. (*Id.*).

Part of Marschke's vision for the Township included clearly delineating and allocating job responsibilities throughout the Township by creating an organizational chart, since the Township did not have one. (*Id.* ¶¶ 30, 46). Indeed, in advance of the December 2020 Democratic caucus, Marschke told his running mates that if they won the election, one of the first acts he wanted to take was reorganizing the Township. (*Id.* ¶¶ 36–37).

During the campaign season, Fox and Woodard supported Marschke's opponent, Felix George, by attending fundraisers, stuffing envelopes, and passing out flyers. (*Id.* ¶ 39). Woodard donated money to George's campaign. (*Id.*). Then-assistant to the supervisor Linda Youngs, who was also Fox and Woodard's manager, also campaigned for George. (*Id.* ¶ 41). Neither Marschke nor any of the trustees on his slate saw Fox or Woodard participating in campaign activities for George. (*Id.* ¶¶ 42, 44–45).

Marschke's slate won the April 2021 election, and on May 17, 2021 the slate was sworn in. (*Id.* ¶ 52). The day after their swearing in, the newly elected Board held its first meeting, during which it voted to reorganize the Township in alignment with an organizational chart Marschke had put in writing several weeks before taking office. (*Id.* ¶¶ 53, 55). The biggest change resulting from the reorganization was the creation of two parallel roles: the Levy Center Director and Township Administrator. (*Id.* ¶ 55). Both positions reported directly to the supervisor, and each was solely responsible for the departments under them. (*Id.*).

Linda Youngs, a Republican and Plaintiffs' supervisor, was appointed to the Levy Center Director position. (*Id.* ¶ 57). Jackie Traynere, a Democrat, was hired to the Township Administrator position. (*Id.* ¶ 60). Plaintiffs' roles were eliminated, and on May 19, 2021, Plaintiffs were terminated. (*Id.* ¶ 64).

### III.     Procedural Background

Plaintiffs initiated this action against DuPage Township, supervisor Gary Marschke, and township administrator Jacqueline Traynere (collectively "Defendants"), alleging violations of 42 U.S.C. § 1983 and Illinois law in connection with the Township's elimination of their positions. (Dkt. 1-1). Plaintiffs alleged that Defendants violated their First Amendment rights (Count I), violated their procedural due process rights (Count II), breached their implied employment contracts with DuPage Township (Count III), engaged in civil conspiracy (Count IV), and violated the Open Meetings Act, 5 Ill. Comp. Stat. 120/1 et seq. (Count V). (*Id.*). The Honorable John Z. Lee, who first presided over this case, granted Defendants' motion to dismiss in part, leaving only Counts I and III against the Township. (Dkt. 21).

### LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). In determining whether a genuine issue of fact exists, the Court must take the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in

5

the parties' [Local Rule 56.1] statement." *Bordelon,* 233 F.3d at 529. Where a proposed statement of fact is supported by the record and not adequately rebutted, the Court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Anderson*, 477 U.S. at 248.

## DISCUSSION

### I.     Plaintiffs' Political Relation Claim Fails.

Plaintiffs allege that the Township, through Marschke, retaliated against them in violation of their First Amendment rights by terminating them for supporting Marschke's opponent in the campaign leading up to the April 2021 election. The Township argues it is entitled to summary judgment because Plaintiffs cannot establish a *prima facie* case of political retaliation.

At summary judgment, "the burden of proof for causation is divided and shifts between the parties." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017). Plaintiffs must first make a *prima facie* showing that their protected First Amendment activity was "at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Id*. If Plaintiffs establish a *prima facie* case, the burden shifts to the Township to rebut this causal inference, which Plaintiffs can then attack as pretext. *Id*. at 313.

To prevail on their claims of political retaliation in violation of the First Amendment, Plaintiffs must prove that they: "(1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *McGreal*, 850 F.3d at 312 (quoting *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015)). The parties agree that attending campaign events and supporting a political candidate of one's choosing are protected activities; and that a termination, even as a result of a

reorganization, could be considered a deprivation likely to deter such activity in the future. They dispute only the third element.

Causation may be proven through direct or circumstantial evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Plaintiffs need not show but-for causation, only that the protected activity was a motivating factor in the Township's conduct. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). The only evidence of causation in this case is the close temporal proximity between Marschke taking office and Plaintiffs' termination. The Seventh Circuit has repeatedly noted that "suspicious timing will 'rarely be sufficient in and of itself to create a triable issue.' " *Kidwell*, 679 F.3d at 966 (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005)). For suspicious timing to save a claim from summary judgment by raising an inference of causation, Plaintiffs must show the adverse action "follows close on the heels of protected expression" *and* "the person who decided to impose the adverse action knew of the protected conduct." *Id.* (quoting *Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001)).

Setting aside the undisputed evidence that the decision to undergo reorganization occurred years before the election, Plaintiffs fail to present any evidence that Marschke or any of his slate knew that Plaintiffs campaigned against him. Fox testified that to the best of her recollection Marschke never talked to her about her involvement with the Republican party and never saw her attending an opponent's campaign event or otherwise campaigning for an opponent. (Dkt. 105-7 at 238:6–239:21). Similarly, Woodard testified that she never spoke to Marschke or his trustees about her political affiliation and they never saw her engaging in political activities like attending fundraisers or putting up signs. (Dkt. 110 ¶ 43). Plaintiffs, without evidence, assert that Marschke *assumed* Plaintiffs were campaigning for Republicans, but their conjecture cannot carry the day at summary judgment.

7

Even if Plaintiffs could demonstrate that Marschke or his running mates knew of Plaintiffs' protected activity, Plaintiffs have not and cannot overcome the Township's plausible argument that the duplicative nature of Plaintiffs' roles, not retaliatory animus, motivated its decision to eliminate Plaintiffs' positions. Indeed, the Township provides undisputed evidence that Marschke's decision to run for office was influenced by his dissatisfaction with Plaintiffs' handling of the Levy Center.

Further undermining Plaintiffs' argument that they were terminated because of their political affiliation is the undisputed fact that the Township did not terminate other Republicans. Youngs, who had been the assistant to the two prior Republican supervisors, was not terminated. Quite the contrary, she was placed in the newly created director of levy center position and was paid just as much as Traynere who was appointed to the parallel position. Ultimately, Plaintiffs have the burden of establishing that the Township's explanation for their termination is pretextual. *McGreal*, 850 F.3d at 312; *see also Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 787 (7th Cir. 2007) ("To survive summary judgment, [plaintiffs] must make a sufficient showing of evidence for each element of [their] case that [they] bear[] the burden of proving at trial."). Because Plaintiffs have not done so, the Court grants summary judgment on Count I.

## II.    Plaintiffs' Breach of Implied Contract Claim Fails.

Turning to the breach of implied contract claim, the threshold issue is whether the Township had a contractual obligation to only terminate Plaintiffs with cause and in accordance with the Handbook's progressive discipline policy. Where a court's jurisdiction is based on diversity, resolution of substantive issues is determined by applicable state law. *Donaldson v. Johnson & Johnson*, 37 F.4th 400, 406 (7th Cir. 2022) (citing *Skyrise Constr. Group, LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020)). Under Illinois law, employment relationships of

indefinite duration are presumed to be "at will," unless the facts suggest a contractual relationship. *Long v. Tazewell/Pekin Consol. Communication Ctr.*, 574 N.E.2d 1191, 1192 (Ill. App. Ct. 1991) (citing *Duldulao v. St. Mary's of Nazareth Hospital*, 505 N.E.2d 314, 318 (1987)). "A handbook that contains a clear promise of continued employment gives rise to legal entitlements." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007) (citing *Duldulao*, 115 Ill. 2d at 490). "However, where the employee manual contains a disclaimer indicating that the manual promises nothing and does not act as a contract, no enforceable contractual rights will be conferred on the employee based on that manual." *Ivory v. Specialized Assistance Servs., Inc.*, 365 Ill. App. 3d 544, 546 (2006).

Here, the Handbook unequivocally and unambiguously states:

> This employee handbook and the individual policies contained herein do not create *any* contractual rights. Unless your employment is governed by a separate collective bargaining agreement or duly executed contract stating otherwise, you are an at-will employee. That means that the employment relationship is for no definite or determinable period of time, and regardless of salary, position or rate of pay may be terminated by [] DuPage Township … at any time with or without cause or notice. Nothing in this employee handbook is meant to alter that relationship in any manner. … Any agreement that contradicts your at-will status … must specifically state that the at-will relationship between you and DuPage Township has changed and a new standard is to be applied.

(Dkt. 114 at 6) (emphasis added). Under Illinois law, this unambiguous disclaimer is sufficient to show that the Handbook does not create a legal right. *Davis v. Times Mirror Magazines, Inc.*, 297 Ill. App. 3d 488, 498 (1998); *Semerau v. Vill. of Schiller Park*, 210 Ill. App. 3d 493, 496 (1991); *Habighurst v. Edlong Corp.*, 209 Ill. App. 3d 426, 429 (1991); *Anders v. Mobil Chem. Co.*, 201 Ill. App. 3d 1088, 1094-95 (1990); *see also Moss*, 473 F.3d at 701.

Plaintiffs do not challenge the disclaimer in the Handbook or that they received the Handbook. Instead, they assert, without citing any supporting authority, that the Handbook's procedures for "accessing employee performance evaluations, behavior, discipline, remedial actions, and terminations for cause … [constitute] offers by the Township that Plaintiffs accepted."

(Dkt. 112 at 14). By Plaintiffs' reasoning, no employer could have a performance assessment policy or progressive discipline policy without creating contractual rights with its employees. That cannot be. When an employer expressly states it does not intend to be bound by the practices outlined in its employee manual, no contract is formed. *Ivory*, 365 Ill. App. 3d at 546; *Lampe v. Swan Corp.*, 571 N.E.2d 245, 247 (Ill.App.Ct.1991) (language that merely gives examples of the kinds of conduct which will subject an employee to discharge does not amount to an offer).

Worth noting is that Illinois courts have an exception to the general rule of at-will employment where there has been a retaliatory discharge of the employee. *Cretella v. Azcon, Inc.*, 2022 IL App (1st) 211224, ¶ 19, *appeal denied*, 210 N.E.3d 795 (Ill. 2023) (citing *Price v. Carmack Datsun, Inc.*, 109 Ill. 2d 65, 67 (1985)). But, because the Court finds that the Township did not terminate Plaintiffs in retaliation for their political activity, the exception does not apply. The Township's motion for summary judgment on Plaintiffs' breach of implied contract claim is therefore granted.

## CONCLUSION

For the reasons set forth above, the Township's motion for summary judgment [103] is granted.

Virginia M. Kendall
United States District Judge

Date: November 20, 2024

10